## Bispham's Estate.

*Petition for review—Laches—Application to open a series of adjudications to reduce the amount awarded to trustee to produce annuity.*

A died May 8, 1888, leaving a will duly admitted to probate, by which he gave an annuity of $1200 to B and directed sufficient principal to be set aside to produce this sum annually. After the death of B, he gave the principal producing the annuity to his son, C, should he then be living; otherwise, to C's children. On the audit of the account of A's executors, Jan. 15, 1889, the Auditing Judge held that "at least $33,000" was necessary to protect the annuity, and the trustee set aside that sum. On June 12, 1901, on the adjudication of the account of the trustee, filed by his executor, the Auditing Judge awarded the substituted trustee $38,615. At this audit, a paper signed by C, executed April 29, 1901, was offered in evidence, in which he expressed a desire for the confirmation of the account with payment of the balance to the substituted trustee. On May 4, 1920, on the audit of the next account, C claimed a part of the $38,615 as income which had been transferred to principal prior to 1901, and asked that distribution thereof be made to him as the person entitled to the residue of the estate. The Auditing Judge declined to do this, saying that it was impossible to ascertain how much of the said sum was accumulated income and how much was increase in the value of securities. He also felt bound by the adjudication of 1901 that the sum stated was principal, and, in any event, he said $38,000 was necessary to protect the annuity and directed all over that sum to be paid to C. On June 8, 1920, C filed a petition for review of this adjudication. On Feb. 17, 1921, the petition was dismissed without prejudice, on the ground that it was necessary to retain the entire principal to protect the annuity. C died Oct. 2, 1921, and B died March 6, 1925. At the audit of the final account of the substituted trustee filed after B's death, C's executrix claimed the sum alleged to have been transferred from income to principal prior to 1901. The Auditing Judge dismissed the claim and his ruling was sustained by the court *in banc* on June 4, 1926. On July 8, 1926, C's executrix filed a petition for review of the above adjudications in order that there might be awarded to her the income alleged to have been transferred to principal prior to 1901: *Held*, that her rights rose no higher than those of C, her testator, and as he had acquiesced for nineteen years in the decree of the court entered in 1901, ascertaining and defining the amount of principal necessary to protect the annuity, she had no standing to object to his action in so doing: *Held*, further, that the petition was defective in certain of the averments specified in the opinion.

Petition for review and answer thereto. O. C. Phila. Co., April T., 1888, No. 242.

*Roper & Caldwell*, for petitioner; *White, Parry, Schnader & Maris*, contra.

THOMPSON, J., Dec. 17, 1926.—William D. Bispham died May 8, 1888, and by his will gave an annuity of $1200 to Ellen J. Parker, without setting aside any specific sum to produce the same, but providing as follows: "after the reservation of a principal sum, which either at the average rate of interest of the permanent securities in which my estate may be invested, or at the

average rate of interest obtainable for trust investments, will be ample to yield the net income or yearly sum of One Thousand Two Hundred Dollars," and directed that, after her death, the principal from which said income had been drawn should be paid to testator's son, David S. Bispham, if he should then be living, otherwise to the children of said son. Testator's residuary estate, principal and income, was then given, one-half to David S. Bispham absolutely, and also the remaining one-half upon the death of his mother, which occurred in 1893.

At the audit of the executor's account on Jan. 15, 1889, the Auditing Judge held that "at least" $33,000 was necessary to protect the annuity of Miss Parker, in the following language: "The Auditing Judge is of the opinion that to pay said annuity and the expenses of the trust at least $33,000 of securities should be reserved."

On June 12, 1901, the adjudication of the account of Edward P. Allinson, deceased trustee of the fund, fixed the balance of principal awarded to the substituted trustee at the amount stated in the account, to wit, $38,615. At this audit, David S. Bispham presented to the court his written approval of the account and his request for its confirmation as stated, in the following form:

"In the matter of the account of Albert B. Weimer, executor under the will of the late Edward P. Allinson, Esq., deceased, who was trustee for Ellen J. Parker, under the will of Wm. D. Bispham, deceased.

"I, David S. Bispham, son of the late Wm. D. Bispham and residuary legatee under the trust created by his will in the late Edw. P. Allinson for Ellen J. Parker for life, having examined the said account which has been sworn to and filed by the said Albert B. Weimer on behalf of Mr. Allinson's estate, do hereby acknowledge and declare that I believe the said account to be correct and true in its debits and credits and that the disbursements made as therein stated have been made as claimed, and I desire the confirmation of the same by the Orphans' Court of Philadelphia County, and the balance in the hands of the said Accountant to be paid over to S. Davis Page, who has upon my petition to the said Honorable Court, been by them substituted in the place of the said Edw. P. Allinson so deceased.

"New York, April 29th, 1901. DAVID S. BISPHAM.
"Witness present at signing, George A. Glaenzer."

On May 4, 1920, at the audit of the next account of the trust, it was claimed by David S. Bispham, the residuary legatee, that part of the sum of $38,615 was income which had been transferred to principal prior to 1901. He asked that distribution thereof be made to him of such income as the person entitled to the residue of the estate.

The Auditing Judge, in his adjudication filed May 20, 1920, said that he could not determine how much of the increase from $33,710, the valuation of the securities forming the trust, to $38,615 was accumulated income and how much was increase in the value of securities. He also felt bound by the adjudication of 1901 that the sum stated was principal, and, in any event, he felt that $38,000 was necessary to protect the annuity, and directed that the amount over that sum be paid to Bispham.

On June 18, 1920, David S. Bispham filed a petition for review of the adjudication of 1901. The relief was asked on the ground that the adjudication of 1889 fixed the principal to be held to protect the annuity at $33,000, and, therefore, that the principal of $38,615 awarded in 1901 was in excess of the needs of the annuity, and the excess should be awarded to the petitioner. There was no averment in the petition that the principal of $38,615

awarded in 1901 included accumulated income. The court, on Feb. 17, 1921, refused the petition for review, without prejudice, on the ground that it was necessary to retain the entire principal to protect the annuity.

David S. Bispham, the residuary legatee, died Oct. 2, 1921, and Ellen J. Parker, the annuitant, died March 16, 1925. At the audit of the first and final account of Howard W. Page, substituted trustee, filed after the death of Miss Parker, a claim was made on behalf of the estate of David S. Bispham for the sum alleged to have been transferred from income to principal prior to 1901. The Auditing Judge held that he was without power to review the finding in the adjudication of 1901 that this fund was principal, and he awarded the entire principal to Vida Bispham Faconti and Leonie Bispham McKay, the children of David S. Bispham. Exceptions to his adjudication filed by the estate of David S. Bispham were dismissed by the court on June 4, 1926.

On July 8, 1926, Henrietta Muller Ten Eyck, executrix of the will of David S. Bispham, filed the present petition for review of the various adjudications above mentioned in order that there might be awarded to her the income alleged to have been transferred to the principal account prior to 1901.

The petition is fatally defective in the following essential particulars:

1. It assumes that the sum of $33,000 was definitely ascertained and fixed by this court as the amount necessary to produce the annuity of $1200 to Miss Parker, when the first Auditing Judge, in 1889, said that at least $33,000 should be set aside to secure Miss Parker's annuity, which sum was further increased to $38,000 by decree of this court on May 20, 1920.

2. Section 48 of the Fiduciaries Act of 1917 provides: "which errors shall be specifically set forth in said petition of review." This the petition fails to do, and it may well be that if a review were granted that which the petition avers to be interest will be found to be increased value of the securities of the trust.

3. The petition seeks to have an adjudication of this court made in 1901, and to which no exceptions were filed, opened, and the balance found thereby to be principal declared to be part principal and part income, notwithstanding the fact that petitioner's testator certified in writing that the balance of principal as stated in said adjudication was correct.

4. The petition fails to aver that petitioner's testator was not fully aware of all the facts which justified the court in fixing the principal as stated in the adjudication of 1901 at the time it was so ascertained, and further fails to show any error appearing on the face of the record or any new matter that has arisen since the decree sought to be opened was entered.

5. Petitioner's testator died Oct. 2, 1921, and the present petition was not filed until July 8, 1926, and the petition fails to explain the delay of petitioner's testator, or of the petitioner, in seeking to correct the alleged error.

Petitioner's rights can rise no higher than those of her testator, and if he had for nineteen years acquiesced in the decree of this court entered in 1901, ascertaining and defining the amount of principal necessary to protect the annuity of $1200 to Miss Parker, petitioner has no standing to object now to the act of her testator in so doing. Assuming that the amount of principal found by the decree of 1901 included an amount of interest which did not properly belong thereto, said interest belonged to David S. Bispham, and he, for reasons of his own, requested the court to include it as part of the principal. He and those claiming under him are now estopped from claiming otherwise, especially after the great unexplained delay shown by petitioner's testator and the petitioner. In the circumstances of the instant

case we know of no legal reason why the one entitled to the residuary estate may not intelligently increase the fund withheld for payment of an annuity. The fact that he does it from accumulated income instead of from principal does not affect the question.

If authorities are needed to support the conclusions hereinbefore reached, they will be found in the following cases: Nixon's Estate, 239 Pa. 270; Sherwood's Estate, 206 Pa. 465; Neill's Appeal, 93 Pa. 177.

The petition for review is dismissed.